Case 4:17-cv-00416 Document 55 Filed on 08/10/18 in TXSD Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
August 10, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARLON WOODS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-416 |
| | § | |
| RIVERBEND COUNTRY CLUB, INC., | § | |
| RIVERBEND COUNTRY CLUB, INC. | § | |
| OCCUPATIONAL INJURY EMPLOYEE | § | |
| BENEFIT PLAN, and SPECIAL | § | |
| INSURANCE SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant Special Insurance Services, Inc.'s ("SIS") Motion for Summary Judgment (Doc. 26), Defendants Riverbend Country Club, Inc. and Riverbend Country Club, Inc. Occupational Injury Employee Benefit Plan's (collectively, "the Riverbend Defendants") Motion for Summary Judgment (Doc. 38) and First Supplemental Motion for Summary Judgment (Doc. 40), and Plaintiff's Cross Motions for Summary Judgment (Docs. 53, 54). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant SIS's motion be **GRANTED**, the Riverbend Defendants' motions be **GRANTED**, and Plaintiff's cross-motions be **DENIED**.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 29, Ord. Dated Dec. 14, 2017.

## I. Case Background

Plaintiff filed this suit under the Employee Retirement Income Security Act of 1974[2] ("ERISA") seeking benefits allegedly owed to him under an occupational injury employment benefit plan (the "Plan").[3]

### A. Policy Provisions

Plaintiff was covered under the Plan through his employer, Riverbend Country Club, Inc. ("RiverBend CC").[4] SIS served as the third-party administrator to the Plan.[5] Under the Plan, "accident" was defined as

> an event that: 1) was unforeseen, unplanned, unexpected and abrupt; 2) occurred at a specifically identifiable time and place; 3) occurred by chance from unknown causes; 4) solely and independently of all other causes, resulted in Injury to a Participant; 5) arose out of the Participant's course and Scope of Employment with Company; and 6) occurred during the Plan Term.[6]

Accidents were considered covered occurrences under the Plan.[7] Specifically excluded under the Plan were:

> 11. Any claim that does not result from an Accident . . . .

---

[2] 29 U.S.C. §§ 1001-1461.

[3] See Doc. 1, Pl.'s Compl.

[4] See Doc. 26-1, Ex. A to Def. SIS's Mot. for Summ. J., Admin. R. pp. 96-125.

[5] Doc. 26-2, Ex. B to Def. SIS's Mot. for Summ. J., Aff. of Carla Jakhar pp. 1-2.

[6] Doc. 26-1, Ex. A to Def. SIS's Mot. for Summ. J., Admin. R. p. 97.

[7] See id. p. 98.

25. Infections of any kind regardless how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound during the Participant's Scope of Employment independent and in the absence of any underlying sickness, disease or condition including, but not limited to, diabetes . . .

27. Any Pre-Existing Condition . . .

32. The medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment;[8]

Pre-existing condition was defined as "an Occupational Injury caused by, or diagnosed to be, the aggravation or re-injury of a condition or injury for which the Participant received medical treatment, care or advice prior to the date the Participant's coverage became effective under the Plan."[9]

**B. Basis for Claim**

On October 2, 2015, Plaintiff, a maintenance worker for Riverbend CC, tripped on a rock on a sidewalk and fell while setting up chairs and tables for a wedding at the country club.[10] In his claim form, affidavit, and employee statement, Plaintiff stated that he received cuts to his hand and toe from the fall.[11] In the course of the investigation, other employees reported that

---

[8] See id. pp. 102-04.

[9] Id. p. 100.

[10] See Doc. 26-1, Ex. A to Def. SIS's Mot. for Summ. J., Admin. R. pp. 1, 7, 9.

[11] See id. pp. 2, 7; Doc. 54-3, Ex. 4 to Resp. to Riverbend Defs.' Mot. for Summ. J. & Pl.'s Cross-Mot. for Summ. J., Aff. of Pl. pp. 1-2.

Plaintiff received a cut to his hand from the fall.[12] Plaintiff's supervisor stated that Plaintiff only reported the hand injury and was offered, and refused, medical treatment for his hand.[13] Plaintiff claims he was not offered medical treatment.[14] In the days following the fall, Plaintiff's supervisor stated that Plaintiff complained about leg pain.[15] In a phone conversation between Plaintiff and his supervisor, his supervisor recalled that they discussed "how bad diabetes was and [Plaintiff] admitted to [him] this was all diabetic related."[16] Plaintiff's supervisor recounted that Plaintiff had a known history of diabetes.[17] Plaintiff spoke with Donna Barclay, the authorized policyholder representative, on October 27, 2015, and they discussed how his diabetes had "taken a toll on his health," and how he had a history of foot circulation problems.[18]

Plaintiff sought medical treatment for his toe from Mark Blick, D.O., ("Dr. Blick") on October 6, 2015, and complained of pain and swelling in his left foot, attributing the pain to a fall

---

[12] See id. p. 9-14.

[13] See id. p. 9.

[14] Doc. 54-3, Ex. 4 to Pl.'s Resp. to Riverbend Defs.' Mot. for Summ. J. & Pl.'s Cross-Mot. for Summ. J., Aff. of Pl. p. 1.

[15] Id. pp. 10-14.

[16] Id. p. 10-11.

[17] See id. p. 12, 14.

[18] Id. p. 15.

4

at work.[19] Dr. Blick noted Plaintiff's history of type 2 diabetes, hypertensive heart disease, and chronic kidney disease.[20] On October 12 and October 16, 2015, Plaintiff saw podiatrist Richard Rees, D.P.M., ("Dr. Rees"), who opined that Plaintiff had gangrene with cellulitis on his left fifth toe, also noting his history of diabetes.[21] On October 21, 2015, Plaintiff returned to Dr. Rees for a follow-up due to continuing gangrene in his left fifth toe.[22] Dr. Rees noted that Plaintiff "relate[d] no history of trauma to this condition."[23] Dr. Rees referred Plaintiff to the emergency room.[24]

Plaintiff presented to Houston Methodist Sugar Land Hospital Emergency Room on October 21, 2015.[25] The records stated that the onset of the gangrene condition "began/occurred gradually."[26] On the intake form, Jafar Imanpour, M.D., ("Dr. Imanpour") noted that Plaintiff "claim[ed] that 2 weeks ago, he fell at work and he started to have some small wound in the left fifth toe and some skin tear . . . but unfortunate[ly] in the last 2 weeks he has been

---

[19] See id. p. 23.

[20] See id.

[21] See id. p. 21-22, 28-29.

[22] See id. p. 24.

[23] Id.

[24] See id. p. 25.

[25] See id. pp. 30-31.

[26] Id. p. 30.

5

getting worse."[27] On October 25, 2015, Plaintiff was discharged after his toe was amputated.[28] Dr. Imanpour noted that Plaintiff's condition was stable, but his diabetes was "uncontrolled" and that he had "[s]evere diabetic peripheral neuropathy."[29]

## C. Third-Party Administrator

SIS is the third-party administrator to the Plan.[30] The Riverbend Defendants hired SIS to administer the Plan.[31] Carla Jakhar ("Jakhar"), the claims manager for SIS, explained that SIS was:

> a Third Party Administrator and acted as such on behalf of the Riverbend Plan. Its authority with regard to actions taken on behalf of the plan is set forth in the Riverbend plan. It does not have the authority to deny claims on behalf of the plan, nor did it. It did not exercise actual control over the Riverbend plan and made no decision to deny the initial claim or the appeal filed by [Plaintiff] relating to the October 2, 2015, alleged injury. SIS advised the Riverbend plan administrator with regard to the scope of the Riverbend plan and its coverage, but the decision to deny [Plaintiff's] October 2, 2015, claim was done by the Riverbend Plan and not SIS. As a third part [sic] administrator, SIS refers all disputed claims to the plan administrator for resolution.[32]

Emails between SIS and the Riverbend CC show that SIS offered

---

[27] Id. p. 33.

[28] See id. p. 41.

[29] Id.

[30] See Doc. 26-2, Ex. B to Def. SIS's Mot. for Summ. J., Aff. of Carla Jakhar pp. 1-2.

[31] See id. p. 2.

[32] Id.

opinions as to whether Plaintiff was eligible for benefits under the Plan.[33] In the email from SIS to Riverbend CC on December 17, 2015, SIS explained that it did not believe that Plaintiff was eligible for benefits under the Plan, and asked how Riverbend CC wanted to handle the claim, inquiring whether it wanted to pay Plaintiff's claim or deny it under the Plan.[34] Riverbend CC responded that it decided to deny Plaintiff's claim under the Plan.[35] On August 10, 2016, the manager of the Riverbend CC, Wynn Chapman ("Chapman"), stated that there was no new information that would warrant a change in position as to the denial of Plaintiff's claim.[36] Chapman explained that Riverbend CC decided to therefore reaffirm the denial of benefits under the Plan.[37] In his deposition, Chapman explained that SIS reviewed the medical records, that he relied on their evaluation of the records, and that the medical records were not personally reviewed by the Riverbend Defendants.[38]

---

[33] See Doc. 26-2, Ex. 1 to Def. SIS's Mot. for Summ. J., Emails from December 2015; Doc 26-2, Ex. 2 to Def. SIS's Mot. for Summ. J., Email Dated August 10, 2016.

[34] See Doc. 26-2, Ex. 1 to Def. SIS's Mot. for Summ. J., Emails from December 2015.

[35] See id.

[36] See Doc 26-2, Ex. 2 to Def. SIS's Mot. for Summ. J., Email Dated August 10, 2016.

[37] See id.

[38] See Doc. 53-1, Ex. 2 to Pl.'s Response & Cross-Mot. for Summ. J., Dep. of Chapman pp. 75-77.

Jakhar testified that she was told that the Riverbend Defendants did a "thorough" job of investigating Plaintiff's claims and that they undertook their own investigation.[39] Jakhar explained that SIS took "direction and information" from the Riverbend Defendants and that it did not "make any determinations."[40] Jakhar also testified that Riverbend "was adamant that [Plaintiff's injury] was not an on-the-job accident and that this was related to the diabetes."[41]

### D. Initial Denial

On November 3, 2015, Plaintiff signed and submitted a claim to SIS, seeking the Plan's benefit based on his toe injury and subsequent amputation.[42] On January 15, 2016, his claim was denied.[43] The denial explained that Plaintiff's injury was not covered for several reasons: (1) it was not the result of an accident; (2) medical treatment due to illness was not covered by the plan; and (3) Plaintiff's injury was not immediately reported to his supervisor.[44]

### E. Denial on Appeal

---

[39] See Doc. 53-2, Ex. 3 to Pl.'s Response & Cross-Mot. for Summ. J., Dep. of Jakhar p. 63.

[40] Id. pp. 63-68.

[41] Id. p. 64.

[42] See Doc. 26-1, Ex. A to Def. SIS's Mot. for Summ. J., Admin. R. pp. 1-3.

[43] See id. pp. 126-28.

[44] See id. p. 127.

8

On July 12, 2016, Plaintiff filed an appeal, which was denied on August 12, 2016.[45] In the affirmation decision, Chapman reasoned:

> The ERISA plan provides for treatment of bodily injury solely and independently of all other causes that results from a covered accident. [Plaintiff] did not inform us his foot or toe was injured when he reported the fall. He indicated an injury only to his hand and said he did not need medical treatment, so we went ahead and administered first aid to the scratch on his hand.
>
> Mr. Woods was off work on more than one occasion before the accident as a result of his uncontrolled diabetes, and he spoke freely about his condition. That uncontrolled diabetes is indicated to be the cause of Mr. Woods' foot and toe condition.
>
> The ERISA plan does not provide for treatment of pre-existing conditions or medical conditions.[46]

**F. Lawsuit**

Plaintiff filed this suit on February 9, 2017, alleging that Defendants wrongfully denied him benefits, and that the Riverbend Defendants breached their fiduciary duty.[47] In addition to payment of the Plan benefits, Plaintiff also sought attorney's fees and costs.[48] Pending before the court are dispositive motions filed by all parties on Plaintiff's claims.[49]

---

[45] See id. pp. 482-98, 940-41.

[46] Id. p. 940.

[47] See Doc. 1, Pl.'s Compl.

[48] See id. p. 11.

[49] See Doc. 26, Def. SIS's Mot. for Summ. J.; Doc. 38, Riverbend Defs.' Mot. for Summ. J.; Doc. 40, Riverbend Defs.' 1st Supplemental Mot. for Summ. J.; Doc. 53, Pl.'s Resp. to Def. SIS's Mot. for Summ. J. & Pl.'s Cross-Mot. for Summ. J.; Doc. 54, Pl.'s Resp. to Riverbend Defs.' Mot. for Summ. J. & Pl.'s Cross-Mot.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).  These rules apply to summary judgment motions in ERISA cases.  Green v. Life Ins. Co. of N. Am., 754 F.3d 324, 329 (5th Cir. 2014)(quoting Cooper v. Hewlett-Packard Co., 592 F.3d 645, 651 (5th Cir. 2009)).

 "When parties file cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." Id.

## III. Analysis

All parties filed motions for summary judgment on whether

---

for Summ. J.

10

Plaintiff was wrongfully denied benefits under the Plan.[50]

**A. SIS**

SIS contends that, as the third-party administrator of the Plan, it should not be liable because it did not have control over its administration. Plaintiff argues that because SIS controlled the medical determination in this case, it can also be held liable for the wrongful denial of Plaintiff's benefits.

The Fifth Circuit has addressed the issue of whether third-party administrators could be held liable under ERISA. See LifeCare Mgmt. Servs. LLC v. Ins. Mgmt Adm'rs Inc., 703 F.3d 835 (5th Cir. 2013). Looking to other circuits for guidance, the court found that a third-party administrator "may be held liable only if it exercises 'actual control' over the benefits claims proces." Id. at 844. The court endorsed that "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan" which can consist of someone other than the plan administrator. Id. (quoting Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 665 (1st Cir. 2010)). If that

---

[50] Plaintiff has abandoned his breach of fiduciary duty claim, agreeing with Defendants that it cannot stand along with his claim for wrongful denial of benefits. See Doc. 54, Pl.'s Resp. to Riverbend Defs.' Mot. for Summ. J. & Pl.'s Cross-Mot. for Summ. J. p. 3. The court agrees, as even if Plaintiff's claim for wrongful denial of benefits is non-meritorious, he still cannot maintain a separate breach of fiduciary duty claim. See Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)(finding that Section 1132(a)(3) is a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries causes by violations that [Section 1132] does not elsewhere adequately remedy."); Tolson v. Avondale Indus., Inc., 141 F.3d 604, 610 (5th Cir. 1998)("The simple fact that [plaintiff] did not prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable.").

person or entity "takes on the responsibilities of the administrator" then it can be found liable for the plan's benefits. Id. (quoting Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 665 (1st Cir. 2010)).

In LifeCare, the district court's decision to find the third-party administrator liable was affirmed because facts showed that it exercised discretion and actual control over the administration of benefits. Id. at 845. The third-party administrator not only interpreted the meaning of the plan but also utilized this interpretation to deny benefits to claimants. Id. at 845-46. The plan gave the third-party administrator "authority to process all claims presented for benefit under the Plan" and was able to determine which claims were to be considered "routine." Id.

Here, Plaintiff contends that SIS exercised actual control because it made medical determinations of causation. However, there is no evidence demonstrating that SIS had discretion over the decision to deny Plaintiff benefits. While SIS's role in recommending denial of the claim certainly played into the plan administrator's decision, SIS did not have the authority to make the ultimate decision on the award of benefits. Emails between SIS and the Riverbend Defendants demonstrate that the plan administrator made the final decision in this case. Jakhar explained that the plan administrator directed SIS and that SIS made no determinations. Plaintiff has not raised a fact issue on

this point; therefore, SIS cannot be held liable for the wrongful denial of benefits.

**B.  ERISA Review**

ERISA permits a person who was denied benefits under an employee benefit plan to challenge that denial in federal court. 29 U.S.C. § 1132(a)(1)(B).  The United States Supreme Court has held that the denial of benefits under an ERISA plan is "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)(italics omitted)

In 2011, Texas enacted legislation that banned discretionary clauses in certain insurance policies.  See Tex. Ins. Code § 1701.062.  This section rendering discretionary clauses unenforceable applies to policies including those for "accident or health insurance."  Tex. Ins. Code § 1701.002(1)(A).  In this case, the Plan "provides payment for medical care, salary continuance, and certain death and dismemberment benefits arising from accidental injuries within the course and scope of employment."[51] As the Plan covers health care in the event of an accident on the job, it clearly falls under Texas Insurance Code § 1701.002(1)(A),.

---

[51]  Doc. 26-1, Ex. A to Def. SIS's Mot. for Summ. J., Admin. R. p. 96.

13

Under Texas Insurance Code § 1701.062(b), discretionary clauses are defined as clauses "includ[ing] a provision that:

    (1)    purports or acts to bind the claimant to, or grant deference in subsequent proceedings to, adverse eligibility or claim decisions or policy interpretations by the insurer; or

    (2)    specifies:

        (A)    that a policyholder or other claimant may not contest or appeal a denial of a claim.

        (B)    that the insurer's interpretation of the terms of a document or decision to deny coverage or the amount of benefits is binding upon a policyholder or other claimant;

        (C)    that in an appeal, the insurer's decision about or interpretation of the terms of a document or coverage is binding; or

        (D)    a standard of review in any appeal process that gives deference to the original claim decision or provides standards of interpretation or review that are inconsistent with the laws of this state, including the common law.

Texas Insurance Code § 1701.062(b).

The discretionary clause in the Plan in this case stated, in relevant part: "The action of the Plan Administrator in exercising all of the rights, powers, and authorities set out in Article IV, when performed in good faith and in its sole judgment, shall be final, conclusive and binding upon all parties."[52] This clause qualifies as a discretionary clause under Texas Insurance Code § 1701.062(b)(1), as it purports to bind the claimant to decisions

---

[52] See id. p. 114.

made by the plan administrator.

In interpreting § 1701.062 of the Texas Insurance Code, the Fifth Circuit explained that it found it to "only render[] discretionary clauses unenforceable" and it did "not attempt to prescribe the standard of review for federal courts in ERISA cases." Ariana M. v. Humana Health Plan of Tex., Inc., 884 F.3d 246, 250 (5th Cir. 2018). The court elected not to decide whether federal law preempts this provision, as the defendant did not raise that argument. Id. Similarly, no party in this case mentions any such argument. The court finds therefore that the discretionary clause in this case is unenforceable.[53]

In Ariana M., the Fifth Circuit changed the standard of review for factual determinations, reversing earlier precedent and coming in line with other circuits. 884 F.3d at 250. The court held that factual determinations of ineligibility should be reviewed de novo, rather than for abuse of discretion.[54] Id. at 257. Therefore, the court will review the denial of Plaintiff's benefits de novo.

---

[53] If the discretionary clause were enforceable, the standard of review would be abuse of discretion. See, e.g., White v. Life Ins. Co. of N. Am., 892 F.3d 762, 767 (5th Cir. 2018)("[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion."); Ariana M., 884 F.3d at 247 ("When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion.").

[54] Neither party addresses this case in their motions, even though the motions were filed after the decision was issued on March 1, 2018. Defendant mentions the earlier Ariana M. decision, which was overruled by the court's March 1, 2018 en banc opinion. See Ariana M. v. Humana Health Plan of Tex., 854 F.3d 753 (5th Cir. 2017).

The parties do not dispute the fact that Plaintiff had the pre-existing condition of diabetes before he fell on October 2, 2015. What is in dispute in this case is what caused Plaintiff's toe to require amputation. There are many versions of the incident that emerge from the investigation and medical records.

For example, during the investigation, multiple employees reported that Plaintiff only received an injury to his hand. Plaintiff's supervisor's statement reflected that he offered medical treatment for Plaintiff's hand which was refused. The supervisor also stated that Plaintiff told him that his medical issues were related to his diabetes. The medical records also provide various renditions of the incident. In his visit with Dr. Blick, Plaintiff complains that he fell at work. However, when speaking with Dr. Rees, Plaintiff denied any trauma relating to his foot condition. When he sought treatment at the Houston Methodist Sugar Land Hospital, the records reflected that Plaintiff reported that his toe problem happened when he was at home. However, he also reported that he fell at work that caused a wound in his toe. These varying accounts raise a fact issue on what actually happened on October 2, 2015, and it is unclear from the records the origin of the gangrenous toe. The court will not make the factual determination of causation.

Plaintiff contends that this fact question militates the outcome of the pending motions, and focuses much of his argument on

what Defendants did wrong-namely, not providing him immediate medical treatment and arguing that the Riverbend Defendants did not properly review the medical records. Plaintiff also argues that his accident, not the diabetes, caused his foot condition.

However, as the Riverbend Defendants point out in their motion, the exceptions to the Plan clearly exclude coverage for Plaintiff's claim. The provision on infections states that bacterial infections received in the scope of employment are covered only "independent and in the absence of any underlying sickness, disease or condition including, but not limited to, diabetes." This provision clearly carves out coverage for infections that occur when diabetes is present. There is no dispute in this case that Plaintiff had a history of diabetes and had diabetes when the October 2, 2015 accident occurred. This exception to coverage is dispositive of Plaintiff's wrongful denial of benefits claim. Summary judgment should be granted for the Riverbend Defendants on this claim.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant SIS's motion be **GRANTED**, that the Riverbend Defendant's motions be **GRANTED**, and that Plaintiff's cross-motions be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 10th day of August, 2018.

_____
U.S. MAGISTRATE JUDGE